# STATE OF MICHIGAN

# COURT OF APPEALS

POLYTORX, LLC,

        Plaintiff-Appellant,

v

ANTOINE NAAMAN, SHERIF EL-TAWIL, and
DONG JOO KIM,

        Defendants,

and

JU YOUNG KIM, JI YONG KIM, and SAMBO
CONSTRUCTION MACHINE COMPANY,
LTD,

        Defendants-Appellees.

UNPUBLISHED
April 4, 2017

No. 330893
Washtenaw Circuit Court
LC No. 13-000495-CZ

Before: M. J. KELLY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff, Polytorx, LLC, appeals as of right the trial court's order granting summary disposition and dismissing the case with prejudice as against defendants-appellees, Ju Young Kim, Ji Yong Kim, and Sambo Construction Machine Company, Ltd. We affirm.

This appeal arises out of a dispute involving a design book and a machine used to mass produce steel fibers for concrete reinforcement. The relevant underlying facts of this case are set forth in a previous appeal. See *Polytorx, LLC v Univ of Michigan Regents*, unpublished opinion per curiam of the Court of Appeals, issued May 7, 2015 (Docket Nos. 318151, 320989). Briefly, plaintiff was formed by Luke Pinkerton, who, as a graduate student at the University of Michigan (U of M), was involved, along with Professor Antoine Naaman, in a project to develop steel fiber reinforcement technology for concrete. U of M obtained patents for the fibers, naming Naaman as the inventor, but did not apply for a patent for machinery for manufacturing the fibers. Plaintiff contends that it and U of M entered into an agreement under which the production technology would remain a trade secret and be protected by non-disclosure agreements (NDAs), and plaintiff received a license to produce and sell the fibers. Allegedly, Naaman began working with Dong Joo Kim and Sambo Construction Machine Company, Ltd (Sambo) and developed a competing steel fiber reinforcement product; in 2009, Sambo filed a

-1-

patent application for a machine to manufacture those fibers. The patent was published on April 20, 2012, and Pinkerton claimed he discovered it in September of 2012. In March of 2013, he discovered that the machine and design book he participated in creating were missing from U of M, and he claimed that Sambo's machine was directly copied therefrom.

Plaintiff commenced two simultaneous lawsuits: one against U of M in the Court of Claims, and the other against the named defendants and defendants-appellees in the instant appeal. Prior to the prior appeal, the present defendants-appellees were named but did not participate in this action, appearing only in a limited capacity to contest personal jurisdiction. The previous panel of this Court determined (1) that there was "no genuine issue of material fact that the license agreement did not require U of M to protect any trade secrets related to the production technology" and (2) that Polytorx could not rely on any prior agreements or the NDAs to establish a right to a trade secret in the production technology. *Polytorx, LLC*, unpub op at 9-13. "Because no genuine issue of material fact exists regarding whether U of M was obligated to protect any trade secrets in the production technology," the previous panel held that "any claim against defendants involving trade secrets required dismissal," which included Counts II (misappropriation), III (conversion), and IV (unjust enrichment) and portions of Counts I (tortious interference) and V (civil conspiracy) to the extent they were based on trade secrets. *Id*. at 13-14. This Court explicitly did not consider the personal jurisdiction issue, but remanded for entry of summary disposition as to the then-participating named defendants.

After the remand, Ju, Ji, and Sambo renewed their objection to personal jurisdiction and sought to join the other defendants' motion to dismiss. The trial court concluded that this Court's prior holding that the relevant statute of limitations barred plaintiff's claims necessarily applied to its claims against Ju, Ji, and Sambo. Consequently, the trial court granted summary disposition in their favor. However, the trial court denied Ju, Ji, and Sambo's request for fees and costs.

"Whether the law of the case doctrine applies is a question of law that [this Court] review[s] de novo." *Duncan v Michigan*, 300 Mich App 176, 188; 832 NW2d 761 (2013).

As this Court explained, the law-case-of-the-case doctrine applies in the following circumstances:

> Under the law of the case doctrine, if an appellate court resolves a legal issue and remands to the trial court for further proceedings, the legal question determined by the appellate court will not be decided differently in a subsequent appeal in the same case if the facts remain materially the same. Stated another way, the doctrine is applied when the prior appeal involves the same set of facts, the same parties, and the same question of law . . . [*In re Wayne Co Treasurer*, 265 Mich App 285, 297; 698 NW2d 879 (2005) (quotation marks and citations omitted; alteration in original).]

A trial court's grant of summary disposition is reviewed de novo. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016).

Although Ju, Ji, and Sambo were not parties to the previous appeal, they were named parties in the lower court case (i.e., the instant case) that was previously appealed.

To the extent that the counts involved trade secrets claims against Ju, Ji, and Sambo, Polytorx relies on the same evidence to establish that it had trade secret rights (i.e., the license agreement, prior agreements, and the NDAs[1]), so the same set of material facts and question of law—whether summary disposition was proper based on these same material facts—were at issue. See *In re Wayne Co Treasurer*, 265 Mich App at 297. See also *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 128; 737 NW2d 782 (2007). Accordingly, the law-of-the-case doctrine applies to the claims to the extent that they involve trade secrets. Polytorx's complaint alleged that Ju, Ji, and Sambo collaborated with the other defendants in converting and misappropriating trade secrets. Therefore, as the previous panel of this Court held on the same material facts, dismissal of the counts involving trade secrets—which included Counts II (misappropriation), III (conversion), and IV (unjust enrichment) and portions of Counts I (tortious interference) and V (civil conspiracy) to the extent they were based on trade secrets—was required.

As noted by the previous panel of this Court and the trial court, there were portions of the tortious interference and civil conspiracy counts that did not involve trade secrets (i.e., slandering the product resulting in harm to its reputation). However, other than factual allegations regarding trade secrets, there are no specific factual allegations that Ju, Ji, and Sambo interfered with a business relationship, expectancy, or contract. The allegations against Ju, Ji, and Sambo only involved trade secrets, and, as explained above, the counts involving trade secrets required dismissal. The trial court correctly dismissed all counts. In light of this conclusion, we decline to consider Polytorx's argument that the trial court erred in concluding that the claims against Ju,

---

[1] After the previous appeal, Polytorx submitted various emails, which appear to reference the NDAs that were alleged to be signed. However, these emails do not materially change the facts as to the issue. As the previous panel of this Court explained,

> It is unclear from the complaint if Polytorx was claiming that these NDAs occurred before or after the license agreement was entered in June 2003. If they occurred before, they were not incorporated in the license agreement and could not be relied upon to establish a trade secret in the production technology. If they occurred after, the license agreement required any modifications to be in writing and involve both the parties. There is no allegation, and Polytorx offered no independent evidence, that any NDAs between U of M, Polytorx, and anyone working in the graduate studies program were entered to modify the license agreement. A mere possibility that the claim might be supported by evidence at trial is insufficient to survive summary disposition. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). Therefore, Polytorx could not rely on the NDAs to establish a trade secret in the production technology. [*Polytorx, LLC*, unpub op at 13.]

Ji, and Sambo were time-barred. We also decline to consider Ju, Ji, and Sambo's alternative ground for affirmance regarding lack of personal jurisdiction.

Finally, Ju, Ji, and Sambo argue for sanctions under MCR 7.216(C)(1) and fees under Michigan's Uniform Trade Secrets Act (UTSA). Their first request is not properly before this Court because it was not made in a motion brought under MCR 7.211(C)(8) ("A party's request for damages or other disciplinary action under MCR 7.216(C) must be contained in a motion filed under this rule. A request that is contained in any other pleading, including a brief filed under MCR 7.212, will not constitute a motion under this rule."). We deny the second request because we are not persuaded that the trial court abused its discretion in finding that, while unsuccessful, plaintiff did not pursue its claims in bad faith. Ju, Ji, and Sambo have not set forth any facts suggesting otherwise. See *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 551-552; 886 NW2d 113 (2016) (addressing fees and costs under the Construction Lien Act).

Affirmed.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Amy Ronayne Krause